RAUL VILLARREAL
_____
Name

14218-298
_____
Prison Number

FCI GILMER
_____
Place of Confinement



FILED

DEC  2 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL VILLAREAL _____ ) <br> Full Name of Movant ) <br> ) <br> VS ) <br> ) <br> UNITED STATES OF AMERICA ) <br> _____ ) | Case No. **'19 CV 2304 JAH** <br> (Issued by Clerk's Office) <br><br> MOTION, PURSUANT TO TITLE <br> 28 U.S.C. SEC. 2255 |

(If movant has a sentence to be served in the <u>FUTURE</u> under a federal judgment which he wishes to attack, he should file a motion in the federal court which entered the judgment.)

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY
## A PERSON IN FEDERAL CUSTODY

### INSTRUCTIONS--READ CAREFULLY

1) This motion must be legibly handwritten or typewritten and signed by the movant. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form. Where more room is needed to answer any question use reverse side of sheet.

2) Additional pages are not permitted. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

3) Upon receipt, your motion will be filed if it is in proper order. No fee is required with this motion.

4) If you do not have the necessary funds for transcripts, counsel, appeal and other costs connected with a motion of this type you may request permission to proceed <u>in forma pauperis</u>, in which event you must execute the last page, setting forth information

establishing your inability to pay costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

5)   Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each judgment.

6)   Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

7)   When the motion is fully completed, the **original and two copies** must be mailed to the Clerk of the United States District Court, 333 W. Broadway Suite 420, San Diego, California 92101.

8)   Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

## MOTION

1.   Name and location of court which entered the judgment of conviction under attack:

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

2.   Date of judgment of conviction:   JUNE 21, 2013

3.   Length of sentence:   420 MONTHS      Sentencing Judge:   JOHN A. HOUSTON

4.   Nature of offense or offenses for which you were convicted:

(1) Conspiracy to Bring in Illegal Aliens for Financial Gain; 18 U.S.C. §371

(2-12) Bringing in Illegal Aliens for Financial Gain; 8 U.S.C. §1324(a)(2)(B)(ii)

(13) Receiving Bribe by Public Official; 18 U.S.C. §201(b)(2)(A) & (C)

(15) Conspiracy to Launder Money; 18 U.S.C. §1956(a)(2)(A) & (h)

5.   What was your plea?    X   Not Guilty _____   Guilty _____   Nolo Contendere

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

::ODMA\PCDOCS\WORDPERFECT\14289\2 May 5, 1999 (9:51am)May 4, 1999 (2:48pm)

_____

_____

_____

6.   Kind of trial:    X    Jury    _____ Judge Only

7.   Did you testify at the trial?    _____ Yes    X    No

8.   Did you appeal from the judgment of conviction?    X    Yes    _____ No

9.   If you did appeal, answer the following:

   (a.)   Name of court    Ninth Circuit Court of Appeals

   (b.)   Result    Affirmed in Part; Vacated in part; and Remanded

   (c.)   Date of Result    June 29, 2015

10.   Other than a direct appeal from the judgment of conviction and sentence have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?

   _____ Yes    X    No

11.   If your answer to 10 was "yes," give the following information:

   (a.)   (1.)   Name of court    _____

          (2.)   Nature of proceeding    _____

          (3.)   Grounds raised    _____

                 _____

          (4.)   Did you receive an evidentiary hearing on your petition, application or motion?

                 _____ Yes    _____ No

          (5.)   Result    _____

          (6.)   Date of result    _____

(b.)  As to any second petition, application or motion give the same information:

    (1.)  Name of court  _____

    (2.)  Nature of proceeding  _____

        _____

    (3.)  Grounds raised  _____

        _____

        _____

    (4.)  Did you receive an evidentiary hearing on your petition, application or motion?

        _____ Yes    _____ No

    (5.)  Result  _____

    (6.)  Date of result  _____

(c.)  As to any third petition, application or motion give the same information:

    (1.)  Name of court  _____

    (2.)  Nature of proceeding  _____

        _____

    (3.)  Grounds raised  _____

        _____

        _____

    (4.)  Did you receive an evidentiary hearing on your petition, application or motion?

        _____ Yes    _____ No

    (5.)  Result  _____

    (6.)  Date of result  _____

(d.)  Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

    (1.)  First petition, etc.    _____ Yes    _____ No

    (2.)  Second petition, etc.    _____ Yes    _____ No

    (3.)  Third petition, etc.    _____ Yes    _____ No

(e.)   If you did <u>not</u> appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____


12   State <u>concisely</u> every ground on which you claim that you are being held unlawfully.

CAUTION:   If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, <u>you should raise in this motion all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) though (j) or any one of these grounds.

(a.)   Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b.)   Conviction obtained by use of coerced confession.

(c.)   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d.)   Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e.)   Conviction obtained by a violation of the privilege against self-incrimination.

(f.)   Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g.)   Conviction obtained by a violation of the protection against double jeopardy.

(h.)   Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i.)   Denial of effective assistance of counsel.

(j.)   Denial of right of appeal.

A.   Ground One:   My protected rights to Due Process were violated by prosecutorial misconduct, ineffective assistance of counsel, and other ways.

Supporting FACTS (tell your story briefly without citing cases or law):

Ineffect Assistance of Counsel: My counsel was ineffective in multiple ways, including failing to mount a defense against clear Brady violations, failing to investigate valid defenses, and failure to mount a proper defense against guilelines calculations.

Prosecutorial Misconduct: The government prejudiced this case and denied due process through constructive attempted murder, committing Brady violations, and productive sabatoge of defense.

Other due process violations include a witness being coached on the stand via cell phone.

B.   Ground Two:   Unlawful and Unconstitutional Sentence; Eighth Amendment violations for excessive sentence and fines.

Supporting FACTS (tell your story briefly without citing cases or law):

On remand from the Ninth Circuit, my sentence was given which was over the statutory maximum using upward departures that relied on evidence that was NOT found by a jury beyond a reasonable doubt, in violation of Apprendi/Booker.

The fine given to me was done so in a punative manner and was designed for malicious intent instead of the interests of justice and violate the Eighth Amendment's protections against excessive fines.

C.   Ground Three:

Supporting FACTS (tell your story briefly without citing cases or law):

D.   Ground Four: _____

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):

_____
_____
_____
_____
_____
_____
_____

13.   If any of the grounds listed in 12. A, B, C, and D were not previously presented, state <u>briefly</u> what grounds were not so presented, and give your reasons for not presenting them:

The Ninth Circuit did not decide if the upward departures used to increase my sentence beyond the statutory maximum violated Apprendi/Booker, as the evidence to support them was either acquitted by the trial jury, or vacated by the appellate court. Further constitutional concerns for Ineffective Assistance of Counsel, prosecutorial misconduct, and excessive fines are reserved and appropriate for habeas review, not direct appeal. Therefore, these arguments are germane.

14.   Do you have any petition or appeal not pending in any court as to the judgment under attack?
_____ Yes   _X_ No

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a.)   At preliminary hearing     Robert Little - Law Offices of Robert Little

10201 Trademark Street, Suite C     Rancho Cucamonga, CA 91730-5850

(b.)   At arraignment and plea     Robert Little - Law Offices of Robert Little

10201 Trademark Street, Suite C     Rancho Cucamonga, CA 91730-5850

(c.)   At trial     J. David Nick - Law Offices of J. David Nick

777 E. Tahquitz Canyon Way, Suite 200-82     Palm Springs, CA 92262

(d.)   At sentencing     J. David Nick - Law Offices of J. David Nick

777 E. Tahquitz Canyon Way, Suite 200-82     Palm Springs, CA 92262

(e.)   On appeal   David J. Zugman - Burcham & Zugman

402 West Broadway, Suite 1130     San Diego, CA 92101

(f.)   In any post-conviction proceeding

(g.)   On appeal from any adverse ruling in a post-conviction proceeding


16.   Were you sentenced on more than one count of an indictment, or on more than one indictment/information, in the same court and at approximately the same time?

   __X__   Yes     _____   No


17.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

   _____   Yes     __X__   No

(a.)   If so, give name and location of court which imposed sentence to be served in the future:

(b.)   And give date and length of sentence to be served in the future:

(c.)     Have you filed, or do you contemplate filing, any petition attacking the judgment
which imposed the sentence to be served in the future?

_____ Yes    _____ No

Wherefore, movant prays that the court grant him all relief to which he/she may be entitled in this
proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____

_____
(Signature of Movant)

_____
(Signature of Attorney, if any)

1   Raul Villarreal #14218-298
2   FCI Gilmer
    Federal Correctional Institution
3   P.O. Box 6000
4   Glenville, WV 26351
5   Appearing in *Propria Persona (pro se)*

6
7                   **UNITED STATES DISTRICT COURT**
                    **SOUTHERN DISTRICT OF CALIFORNIA**
8
9   RAUL VILLARREAL,                    Case No.:  **'19CV2304 JAH**

10                  Movant/Petitioner,
                                        Criminal No.:  3:08-CR-01332-JAH-1
11       vs.

12  UNITED STATES OF AMERICA,           **BRIEF IN SUPPORT OF**
                                        **MOTION TO VACATE, SET**
13                  Respondent.         **ASIDE OR CORRECT AS**
                                        **SENTENCE PURSUANT TO 28**
14  _____      **U.S.C. §2255**

15

16       **NOW COMES** RAUL VILLARREAL, appearing as an inmate *pro se*

17  currently residing at FCI Gilmer, and respectfully submits this brief in support of
18
19  the accompanying §2255 Motion to Vacate, Set Aside or Correct a Sentence. I

20  submit this brief, the accompanying motion,[1] and a motion to appoint counsel in
21
22  the event of hearings, with the prayer that this Court will find constitutional

23  deficiency in the due process of my conviction, and vacate my conviction and
24
25  sentence, order a new trial, or grant whatever other relief it deems necessary and in

26  the interests of justice.

27  _____
28  1  Instructions show the Southern District of California does not require and IFP application for
       §2255 motions.

---

                                        1
                        BRIEF IN SUPPORT OF §2255 MOTION

1

## Table of Contents

2

PRELIMINARY STATEMENT...............................................................................3

3

4

JURISDICTION....................................................................................................4

5

PROCEDURAL HISTORY....................................................................................4

6

7

TOLLING.............................................................................................................7

8

Argument summaries..........................................................................................7

9

10

GENERAL STANDARDS OF REVIEW................................................................8

11

ARGUMENT ONE: DUE PROCESS VIOLATIONS...........................................10

12

13

A) Due Process Violation: Ineffective Assistance of Counsel............................11

14

15

I. No Defense Against *Brady* Violation............................................................12

16

II. Failure to Investigate................................................................................15

17

III. Failure to Object to Guidelines Miscalculations.......................................16

18

B) Due Process Violation: Prosecutorial Misconduct......................................21

19

20

I. Constructive Attempted Murder..................................................................22

21

II. *Brady* Violations.....................................................................................23

22

III. Productive Sabotage of Defense...............................................................28

23

C) General Due Process Violations...................................................................30

24

25

I. Sandra Muro Was Being Coached for her Testimony on the Stand Via Cell

26

Phone...........................................................................................................31

27

II. Judicial Bias Against Defendants...............................................................33

28

III. Separation of Client and Defense Attorney...............................................35

BRIEF IN SUPPORT OF §2255 MOTION

ARGUMENT TWO: UNLAWFUL AND UNCONSTITUTIONAL SENTENCE ..................................................................................................36

INDEX.......................................................................................42

D) ORDER AND OPINION OF THE NINTH CIRCUIT IN CASE NO 16-50135.............................................................................................42

E) OPINION OF THE NINTH CIRCUIT IN CASE NO 13-50295...................42

## Talbe of Authorities

28 U.S.C. §2255(f)(1).........................................................................8

Apprendi v. New Jersey, 530 U.S. 466 (2000)........................................18

Berger v. United States, 295 U.S. 78, 88 (1935)......................................22

Blakely v. Washington, 542 U.S. 296 (2004)..........................................18

Brady v. Maryland, 373 U.S. 83 (1963)................................................13

Davis v. Alaska, 145 U.S. 311 (1974)..................................................22

Griswold v. Connecticut, 381 U.S. 479 (1965)........................................11

Lunberry v. Hornbeak, 605 F.3d 754 (9th Cir. 2010).................................22

Mitchell v. United States, 526 U.S. 314 (1999).......................................35

Mooney v. Holohan, 294 U.S. 103(1935)..............................................14

Porter v. McCollum, 558 U.S. 30, 39 (2009)..........................................12

Pyle v. Kansas, 317 U.S. 213 (1942)...................................................14

BRIEF IN SUPPORT OF §2255 MOTION

Rosales-Mireles v. United States, 138 S. Ct. 1897 (2018).....................................17

Silva v. Woodford, 279 F.3d 825 (9th Cir. 2002).........................................................36

Strickland v. Washington, 104 S.Ct. 2052 (1984)........................................................12

U.S. Const. Amd. VI..................................................................................................11

U.S. Const. Amd. XIV................................................................................................11

U.S. v. Washington, 619 F.3d 1252 (10th Cir. 2010)...............................................18

United States v. Billian, 600 F.3d 791 (7th Cir. 2010)............................................18

United States v. Booker, 543 U.S. 220 (2005)...........................................................18

United States v. Carter, 560 F.3d 1107 (9th Cir. 2009)...........................................34

United States v. Olano, 507 U.S. 725 (1993).............................................................17

United States v. Safirstein, 827 F.2d 1380 (9th Cir. 1987).....................................35

United States v. Villareal, 725 Fed. Appx. 515 (9th Cir. Feb 23, 2018)..................8

United States v. Villarreal, 621 Fed. Appx. 883 (9th Cir. June 29, 2015)...............6

Wiggins v. Smith, 539 U.S. 510 (2003).......................................................................12

Woodard v. Collins, 898 F.2d 1027 (5th Cir. 1990)..................................................16

## PRELIMINARY STATEMENT

Here, before the trial Court, I move to challenge the process of my conviction from trial to sentencing. There are three arguments that will be made herein, to include violations of Due Process, Ineffective Assistance of Counsel, and Cruel and Unusual Punishment. All three of these are violations of constitutionally protected rights in the first ten amendments.

Because of these violations, I was not granted a fair trial and my sentence was too harsh to pass the test of the Eighth Amendment's protections. The end result of this analysis into my trial, conviction, and sentence must be a vacated sentence and conviction, and an order for a new trial.

## JURISDICTION

Pursuant to 28 U.S.C. §2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, … or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." I so move this Court on the grounds that the conviction and sentence imposed based on my guilty verdict violates the United States Constitution and is otherwise subject to collateral attack.

BRIEF IN SUPPORT OF §2255 MOTION

## PROCEDURAL HISTORY

I, along with my brother, was an agent for the United States Border Patrol. In 2008, we were indicted by a grand jury in this district for the following counts:

- Conspiracy to bring in illegal aliens for financial gain, in violation of 18 U.S.C. §371;

- Eleven counts of bringing in illegal aliens for financial gain, in violation of 8 U.S.C. §1324(a)(2)(B)(ii);

- Receiving a bribe, in violation of 18 U.S.C. §201(b)(2);

- Conspiracy to launder money, in violation of 18 U.S.C. §1956(a)(2) and (h); and,

- Three counts of conspiracy to tamper with a witness, and witness tampering, in violation of 18 U.S.C. §1512(a)(2), (b)(1), and (k).

Rather than take a plea agreement, both my brother, Fidel, and I proceeded to a jury trial while maintaining our innocence of the entire situation. The trial focused on six alien smuggling incidents that ranged from May of 2005 to April of 2006. I was acquitted of witness tampering but convicted on all other charges, resulting in a sentence of 420 months in prison.

We appealed to the Ninth Circuit, and the result was the bribery convictions being reversed, and the sentence being vacated for misapplication of the Sentencing Guidelines and vagueness regarding the criteria of §3553(a). See *United States v. Villarreal,* 621 Fed. Appx. 883 (9th Cir. June 29, 2015).

On remand, the government did not pursue a retrial on the bribery counts, and so the resentencing calculations were then based upon the applicable guidelines calculations for alien smuggling,  which were highest when grouping since the bribery charges were now gone. This was done under U.S.S.G. §2L1.1. I ended up with an adjusted offense level of 31, with a Criminal History Category of I, resulting in a guidelines range of 108 to 135 months.

After the government requested many upward departures for acquitted and dismissed (by the appellate court) conduct, and objections thereto by my counsel, this Court granted 12 levels of upward departure for:

- A 4-level upward departure for finding that substantially more than 100 aliens were smuggled during the conspiracy, per U.S.S.G. §2L1.1 (n.3);

- A 4-level departure for the dismissed bribery conduct, per U.S.S.G. §5K2.21;

- A 2-level upward departure for disruption of government function, per §5K2.7; and,

1  • Another 2-level upward departure for egregious obstruction of justice, based
2    on the acquitted conduct of witness tampering.
3

4    These upward departures resulted in offense level of 43, and decided to
5  "stack" the sentences so that the final sentence imposed could be greater than the
6
7  statutory maximums of the individual counts, which without the bribery conviction
8  would be 20 years under the money laundering statute, and sentenced me to 336
9
10 months of imprisonment.
11
     Once again, we appealed. However, Ninth Circuit precedent prohibits any
12
13 argumentation that reviews departures at sentencing under plain error review and
14 affirmed the sentences pronounced on remand. See *United States v. Villareal,* 725
15
16 Fed. Appx. 515 (9th Cir. Feb 23, 2018).
17
     We appealed this decision to the Supreme Court with at Petition for *Writ of*
18
19 *Certiorari* on August 1, 2018, and that petition was denied review on December 3,
20 2018. Now, in November of 2019, I (along with my brother) are filing separate
21
22 §2255 motions to include newer controlling precedent, and to attack the sentences
23 imposed on remand on constitutional grounds.
24
25
26
27
28

**TOLLING**

The statutory limitation for filing a Motion to Vacate, Set Aside, or Correct a sentence under Title 28 U.S.C. §2255 is one year which is tolled from "the date on which the judgment of conviction becomes final." 28 U.S.C. §2255(f)(1).

Because my judgment became final on December 3, 2018, this petition is due on or before December 3, 2019. Thus, this motion is timely.

**ARGUMENT SUMMARIES**

The arguments made herein are broken into two main sections. The first contains arguments regarding the denial of my constitutional due process protections, and the second section discusses the sentence imposed on remand being unlawful and unconstitutional.

The section on due process violation, attacking my convictions at their core, is further broken into three sub-sections. The first details ineffective assistance of counsel claims. The second details law enforcement and prosecutorial misconduct (including *Brady* violations) at trial. The third discusses general due process violations at trial.

The section attacking the sentence itself is broken down into unlawful sentence length, as well as 8th Amendment claims against both the incarceration portion of the sentence, and the fine imposed.

## GENERAL STANDARDS OF REVIEW

A motion for relief under §2255 follows the procedures established by the "rules Governing Section 2255 Cases in the United States District Courts" (hereinafter, the "Rules" or "Rule").

The text of §2255 states that, "[u]nless the motion of the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255 (emphasis added).

Similarly, the Rules dictate that, upon initial consideration by the assigned District Judge, a §2255 motion should be dismissed only "if it *plainly* appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) (emphasis added). In all other cases, "the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take action the judge may order." *Id.*

The rules also authorize, where appropriate and by order of the Court, discovery proceedings, an expansion of the record, and an evidentiary hearing. In

the event of a hearing like this, the defendant/movant is then entitled to appointed counsel.[2]

Subsequent to the "Preliminary Review" stage set out in Rule 4, the ultimate legal standard for motions brought pursuant to §2255 is prescribed by statute:

> "If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255.

**ARGUMENT ONE: DUE PROCESS VIOLATIONS**

A criminal defendant in the United States is entitled to the expectation of Due Process, which is specifically protected in both the 6th and 14th Amendments to the United States Constitution.

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." **U.S. Const. Amd. VI**.

---

2  A motion for appointment of counsel in the event of further hearings, evidentiary or otherwise, accompanies this filing.

1
2
3
4
5
6

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." **U.S. Const. Amd. XIV**.

7
8
9

Guarantees of due process are not relegated the domain of explicitly enumerated protections stated in the constitution, but also include penumbras of

10
11
12

the Bill of Rights, which contain certain rights not explicitly protected, but implicitly protected. *Griswold v. Connecticut*, 381 U.S. 479 (1965).

13
14
15
16
17
18
19
20

Among the Due Process rights protected in the Bill of Rights are the right to effective assistance of counsel, protections against government and prosecutorial misconduct, protections against witness tampering (also in the criminal code for the defense side), and protections against judicial bias. All of these are either explicitly or implicitly protected by the Bill of Rights, and recognized by the Supreme Court.

21
22
23
24
25

Here, the specific ways my Due Process protections were violated, and how those violations prejudiced the outcome of my trial and eventual sentence, will be explained in detail.

26
27
28

## A) DUE PROCESS VIOLATION: INEFFECTIVE ASSISTANCE OF COUNSEL

The idea that having the assistance of counsel requires that counsel to be effective is a cornerstone of the adversarial process of criminal convictions in America. Thus, the ineffective assistance of counsel is an violation of the Sixth Amendment.

The Strickland Test: The Supreme Court of the United States established the framework for determining ineffective assistance of counsel in the landmark decision of *Strickland v. Washington*, 104 S.Ct. 2052 (1984) and a series of cases which built upon it. See, e.g., *Wiggins v. Smith*, 539 U.S. 510 (2003); *Porter v. McCollum*, 558 U.S. 30, 39 (2009). The Court articulated a two-part test: First the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. Strickland, id. at 687.

To demonstrate "prejudice," it is necessary to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

As will be discussed below, the representation afforded me, where counsel failed in myriad ways, satisfy the performance prong of the Strickland test. These performance deficiencies will point directly to the prejudice they cased my case, resulting in the conviction and sentence that I am now serving.

## I.    No Defense Against *Brady* Violation

In *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court did not mince words in it's decision, "Suppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*

The suppression of evidence that the defense does not know exists, and th use of testimony known by the prosecution to be perjured is also a violation of Due Process and *Brady*:

> "Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petition to release from his present custody." *Pyle v. Kansas,* 317 U.S. 213, 215-216 (1942) (quoting *Mooney v. Holohan,* 294 U.S. 103(1935)).

In my trial, there are three separate and district *Brady* violations that not only deprived me of my Due Process rights, but also prejudiced my case. Two of these fall under prosecutorial misconduct, and one falls under the category of ineffective assistance of counsel (because counsel refused to object, impeach, or move to suppress). Here I will discuss the latter.

BRIEF IN SUPPORT OF §2255 MOTION

1    There was a video that was referenced by several witnesses, who were
2
3    allowed to view this discovery. I was not allowed to view, analyze, or otherwise
4    have access to this discovery. The video in question shows my brother, Fidel, who
5
6    went to the store for some food, giving a bag to another agent. This bag contained
7    food, and not a cash payout for illicit activities.

8
9    I only know about the existence of this video because I was placed in lock-
10   down custody (SHU), where a co-defendant (who *had* seen this video in discovery)
11   described what was in it. He would have had no knowledge of that exchange if he
12
13   had not seen that video.

14
15   Thus, there was a video, which was used to prosecute myself and my
16   brother, that was easily impeachable with the production of a receipt or witness
17   interview that would demonstrate the contents of that bag was not a payoff, but
18
19   lunch. My defense counsel at trial, J. David Nick, refused to motion for
20   compulsory review of this video, motion to suppress this video in pretrial motions,
21
22   or do any investigation to impeach the conclusions drawn from this video by the
23   government.

24
25   As a further note, there is video evidence that was "lost" by the prosecution
26   of aerial footage of a Customs and Border Patrol agent who testified at my trial,
27   identifying the Kilo Unit (my unit) as traversing an area with a supposed delivery
28

of illegal aliens. My attorney failed to file for suppression or dismissal of testimony based on this lost evidence, or make any *Jencks* demands on testimony from witnesses such as Agent Riches, which would have corroborated their testimony.

This is one of my faults of my trial attorney that had the cumulative effect of prejudicing the eventual conviction and, most importantly, the eventual sentence I am now serving. Were the sum of these mistakes not made, the validity of my guilty verdict would come into question and the sentence I was given would have been markedly lower.

The remainder of this IAC section details other constitutional failures that, when put together, meets the prejudice prong of the *Strickland* test.

## II.    Failure to Investigate

One of the main jobs of defense counsel is to fully investigate potentially viable defense options, strategies, witnesses, and discovery. Failing to investigate important factors in both trial and sentence constitute IAC and a district court must make a determination if that failure to investigate satisfies the prejudice prong of *Strickland. Woodard v. Collins,* 898 F.2d 1027 (5th Cir. 1990).

In my trial, J. David Nick failed to investigate the video in question in the section above. He also failed to even attempt to collect evidence I pointed him to.

In the Customs and Border Patrol data center, there are collections of data from sensors placed in and around inland areas close to the border. This creates a daily "hit list" of activity in an area. This evidence would have been exculpatory for multiple counts charged against me, because a lack of hits would show that nothing traversed that area in the time-frame the government alleged I was transporting illegal aliens through that area and into San Diego.

My attorney flatly refused to subpoena these hit lists, in favor of other strategies. Because I know I was not there at those times and days, I also know that this evidence would have been exculpatory. Thus, counsel was ineffective, and that IAC caused prejudice in my case. The prejudice caused was higher Sentencing Guidelines calculations for counts 1-12, or the nine points I was given for smuggling over 500 aliens. See PSI[3] at ¶ 47, U.S.S.G. §2L1.1(b)(2)(B)-(C).[4]

Miscalculations in sentencing ranges, even when those calculations don't necessarily move outside of the sentence imposed, fail the plain error review test from *United States v. Olano,* 507 U.S. 725 (1993). This, because the Supreme

---

3  All references to "PSI" refer to the Presentence Investigation Report, Docket Entry 305 in this Court's PACER entries. Using the first PSI, rather than the post-remand PSI includes all calculations from Group 1 and Group 2 (bribery) for the purposes of completeness of record.

4  Whereas the government may have been able to prove 25-99 aliens, this "hit list" would have greatly diminished the 500+ aliens smuggled that the government claimed, constituting a 3-point reduction in my eventual guidelines calculations.

1  Court recently decided that miscalculations necessarily satisfy the fourth prong of

2  that test, "[S]eriously affecting the fairness, integrity, or public reputation of

3

4  judicial proceedings." *Rosales-Mireles v. United States,* 138 S. Ct. 1897 (2018).

5

6       This knowledge requires this court to hold further discovery to finally

7  subpoena this evidence to determine its veracity and my innocence on those

8  counts.

9

10  **III.    Failure to Object to Guidelines Miscalculations**

11  Keeping within the realm of sentencing miscalculations, there were other

12

13  miscalculations in my PSI that need no further evidence to be gathered to see.

14  Because the bribery offenses were vacated when this case was remanded for

15  sentencing, group two from the original PSI is inapplicable.

16

17       The review of the PSI is a critical stage that warrants, by itself, a finding of

18  IAC if conducted incorrectly, especially when counsel "was objectively

19

20  unreasonable when he failed to understand the importance of relevant conduct," to

21  a potential sentence. *U.S. v. Washington,* 619 F.3d 1252 (10th Cir. 2010). When a

22

23  PSI contains miscalculations, plain error exists and IAC is invoked. See *Rosales-*

24  *Mireles, id, for* plain error and *United States v. Billian,* 600 F.3d 791 (7th Cir. 2010)

25

26  for IAC.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The holding that "According to available information, at least one illegal alien died during the smuggling venture," 10 points were added to the guidelines calculations. PSI at ¶50. These ten points raised my recommended guidelines range well passed the statutory maximum. This had the effect of increasing my eventual sentence to beyond the statutory maximum of any counts against me.

Since any evidence used to increase my sentence beyond the statutory maximum must be found beyond a reasonable doubt, and these facts were not, then this is addition amounts to a constitutional violation of the 6th Amendment. See *Apprendi v. New Jersey,* 530 U.S. 466 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005) (Stating that, other than a prior conviction, only facts admitted by a defendant or proved beyond a reasonable doubt to a jury may be used to calculate a sentence exceeding the prescribed statutory maximum sentence.)

The PSI also states that I was the originator of this smuggling scheme and therefore an "organizer". "In this venture, R. VILLAREAL (sic) was the individual who came up with the alien smuggling scheme. He turned to an associate, GONZALEZ, who was able to provide R. VILLAREAL (sic) with other individuals needed to carry out his plan." PSI at ¶51.

BRIEF IN SUPPORT OF §2255 MOTION

This is simply untrue and is evident on the transcript record. The organizer and leader of the operation was Hector, by his own admission. He admits on direct questioning that he was in charge of making payouts to Claudia who would then disperse payments to myself and my brother. We were last to be paid.

[Direct examination of Hector Cabrera by Mr. Salel]

Q:   DID YOU PERSONALLY PROVIDE MONEY TO RAUL
     VILLARREAL?

A:   NO

Q:   DO YOU KNOW WHO DID?

A:   CLAUDIA.

Q:   CLAUDIA?

A:   THAT'S RIGHT.

Q:   AND DID YOU PERSONALLY PROVIDE MONEY TO FIDEL
     VILLARREAL?

A:   NO.

Q:   AND WHO PROVIDED MONEY TO FIDEL VILLARREAL?

A:   CLAUDIA.

(Tr. PageID: 1156-1158)

Hector later describes how he had been involved in smuggling since the age of 17 (Tr. PageID: 1242), describes exactly how smuggling operations work and how he handles all persons to be smuggled from Mexico into the United States (Tr.

1  PageID: 1244-1252), and discusses how he was the expert and that the Chief of

2
3  Police in Tijuana was on his bribery-payroll (Tr. PageID: 1275). Adding to this,

4  Hector also admits that the only person who had communication with my brother

5  and I was Claudia (Tr. PageID: 1280).

6

7      Finally, Hector admitted on the witness stand that all orders for the

8
9  operation came from him, and the only decisions my brother and I made regarding

10  the operation were locations (Tr. PageID: 1298).

11
       How, then, if Hector was calling all the major shots, directing all the money,
12

13  and establishing contact with aliens to be smuggled from Mexico until their

14
   eventual drop off in the United States, could I be organizing the operation? These
15

16  points are miscalculated in plain error, on their face.

17
       Because these original 13 points of increased guidelines range, the district
18

19  court (on remand) creatively granted a total of 12 points of upward departure to my

20  sentence calculations, stacking sentences, in order to reach a substantively similar

21
22  sentence to my original sentence. A reasonable jurist could and should conclude

23  that, were the calculations at original sentence to have been made under

24
   constitutional grounds, per *Booker et. al.,* my sentence on remand would have been
25

26  commensurately and upwardly departed to.

27

28

Since my attorney at original sentencing did not do an effective job at this critical stage, it is reasonable to assume that this carried to my resentencing using nearly an identical adjusted offense level to reach a substantially equal sentence. My attorney's failure at this critical stage constitutes Ineffective Assistance of Counsel, and those 13-points (or the resulting 12-points in upward departure at resentencing) are a result of that IAC.

These three IAC sections address, at minimum, 16 added points to my adjusted offense level: 3 points for 100 or more smuggled aliens, and the 13 points for the organizer and resultant death increases discussed in this section. Were my counsel to have been effective, and these 16 points reduced, my adjusted offense level in Group 1 would have been 26, resulting in a sentencing range of 63-78 months of incarceration, which is commensurate with other cases of this sort as argued in my direct appeals, and comports with avoiding sentencing disparities between similar defendants with similar criminal conduct. See §3553(a)(6).

Thus, further evidentiary discovery is needed, my sentence should be vacated, and I should be resentenced with a proper adjusted offense level.

**B)  DUE PROCESS VIOLATION: PROSECUTORIAL MISCONDUCT**

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a

1   peculiar and very definite sense the servant of the law, the two-fold
2   aim of which is that guilt shall not escape or innocence suffer. He may
    prosecute with earnestness and vigor - - indeed, he should do so. But,
3   while he may strike hard blows, he is not at liberty to strike foul ones.
4   It is as much his duty to refrain from improper methods calculated to
    produce a wrongful conviction as it is to use every legitimate means
5   to bring about a just one." *Berger v. United States,* 295 U.S. 78, 88
6   (1935).

7

8       Throughout the entire process of the government's prosecution of my case,

9   there were multiple instances where the office of the United States Attorney made

10
11  egregious violations of my constitutional protections in order to better secure their

12  conviction against me and cause me punishment before a jury decided my guilt.

13
14      Defendants have a right to present a defense, see *Davis v. Alaska,* 145 U.S.

15  311 (1974), and a complete defense at that, see *Lunberry v. Hornbeak,* 605 F.3d

16
17  754 (9th Cir. 2010).

18      These next sections detail these "foul blows" and why those actions

19
20  prejudiced the case against me, resulting in my conviction for lack of ability to

21  present a complete defense.

22

23  **I.      Constructive Attempted Murder**

24  In the same way that a defendant can constructively possess a firearm by affecting

25  the physical presence and trasnportation of that firearm, but never having touched

26
27  said firearm, the government can attempt homicide without threatening my life

28  directly.

1

2

3

4      In the day I was arrested in Mexico, I already had U.S. defense counsel

retained and was negotiating and planning a return to the United States to face

these charges against me.

5

6      Instead of facilitating that return, the government (whether law enforcement

7   or the office of the United States Attorney is immaterial) affected my arrest in

8   Mexico on October 18, 2008, and affected my detention in Mexico pending

9

10  extradition. Somehow, my confinement in Mexico was designated to "Reclusorio

11  Norte" which is Mexico's deadliest prison.

12

13     The U.S. government knew full well that the Mexican Cartels had

14  previously placed a bounty on the lives of any US Border Patrol Agents. While

15

16  incarcerated here, my brother and I had to fight for our survival each day while

17  there. When we were finally extradited to the United States on March 12, 2009, we

18

19  were exhausted, malnurished, and completely unprepared physically and mentally

20  to prepare a defense or participate in the preparation of a defense.

21

22  **II.   *Brady* Violations**

23  As stated above, there were three distinct *Brady* violations (that I know about)

24  during trial. The first was discussed in the IAC section, above, which also

25  referenced two more violations.

26

27

28

These violations center around two co-defendants: Claudia Gonzalez and Hector Cabrera. Both Claudia and Hector were involved in cases where they were being prosecuted outside the instant case.

For Claudia, she was involved in a case where she became sexually involved with one of the Correctional Officers assigned to watch over her in Metropolitan Correctional Center (MCC) San Diego. In order to secure her *extremely* lenient sentence through Rule 35(b) reductions,[5] she was compelled to assist the government as much as possible in order to get her sentence of "time served" and only two years of supervised release.

To secure this deal in which her sentence went from 8 years to "time served," she changed her story to what Special Agent Johnson wanted to hear:

[Mr. Nick, questioning Claudia Gonzalez]

Mr. Nick: ALRIGHT. LET ME BREAK IT DOWN.

    Q:    DURING THE FIRST PORTION OF THE INTERVIEW, YOU DID TELL SPECIAL AGENT JOHNSON THAT RAUL WAS NOT INVOLVED; CORRECT?

    A:    YES.

    Q:    AND YOU TOLD HIM THAT YOU ONLY SUSPECTED THAT HE WAS DUE TO HECTOR CABRERA SHOWING UP AT YOUR HOUSE; IS THAT CORRECT?

---

5  Under U.S.S.G. §5K1.1

1    A:    CORRECT.

2    Q:    AND THEN YOU WERE TOLD - - AND, ACTUALLY, LET ME

3          ASK YOU THIS: YOU KNEW THAT THE PURPOSE OF THIS

4          MEETING WAS FOR YOU TO TRY TO GET A LOWER

5          SENTENCE?

6    A:    YES.

7    Q:    AND YOU UNDERSTOOD BEFORE YOU WENT IN WHAT THE

8          RULES WERE; RIGHT?

9

10   A:    YES.

11   (Tr. PageID: 927-928)

12   [A continuation of Mr. Nick's questioning of Claudia Gonzalez]

13

14   Q:    AND IS IT TRUE THAT AT VARIOUS TIMES THROUGHOUT

15         YOUR INCARCERATION, YOU'VE COMMUNICATED WITH

16         VARIOUS FRIENDS OF YOURS THROUGH E-MAIL AND

17         EXPRESSED TO THEM THAT ON THE DATE THAT YOU

18         TESTIFY, YOU'RE GOING TO GET TO GO HOME?

19   A:    I DON'T RECALL THAT.

20   Q:    HAVE YOU EVER WRITTEN E-MAILS TO FRIENDS WHERE YOU

21         EXPRESS TO THEM THAT YOU WERE GOING TO BE GOING

22         HOME SOON?

23         MR. SALEL: OBJECTION, YOUR HONOR. RELEVANCE

24   AND  - -

25

26         THE COURT:  OVERRULED.

27   Q:    BY MR. NICK:  IS THAT A "YES"?

28   A:    YES

1    Q:   AND THAT'S BECAUSE YOU HAVE AN EXPECTATION THAT

2          BASED ON YOUR TESTIMONY HERE, YOU'RE GOING TO GET,

3          AS YOU'VE SAID IN SOME OF YOUR E-MAILS, CORRECT,

4          CREDIT FOR TIME SERVED?

5    A:   CORRECT.

6    Q:   AND YOU'VE STATED THAT ONE OF THE THINGS THAT YOU

7          JUST CAN'T HANDLE ANY MORE IS - -

8

9          MR. SALEL: OBJECTION, YOUR HONOR. REQUEST FOR

10    A SIDEBAR.

11          MR. NICK: CAN WE HAVE A SIDEBAR?

12          THE COURT:  YES

13   (THE FOLLOWING PROCEEDINGS WERE HELD AT SIDEBAR:)

14          THE COURT:  WHAT'S YOUR QUESTION, SIR?

15

16          MR. NICK: YEAH. YOUR HONOR, SHE REPEATEDLY IN

17   MANY OF HER E-MAILS AND LETTERS EXPRESSES THAT THE

18   REASON WHY SHE WANTED TO DO THIS IS BECAUSE SHE

19   COULD NOT TAKE INCARCERATION ANY LONGER. SHE WANTS

20   TO BE HOME WITH HER CHILDREN AND HER FAMILY. AND

21   THAT'S ALL I WANTED TO GET INTO. SO I'M NOT GOING

22   TO ASK NAMES OR WHERE OR ANY OF THAT.

23          THE COURT:  SIR.

24          MR. SALEL:  YOUR HONOR, AS FAR AS THE E-MAILS,

25   WE HAVEN'T RECEIVED ANY RECIPROCAL DISCOVERY.

26          MS. GILG: YOU GAVE THEM TO US.

27          MR. NICK:: YOU GAVE THEM TO US.

28

BRIEF IN SUPPORT OF §2255 MOTION

1          MR. SALEL:  THOSE E-MAILS, OKAY. SO I STAND

2      CORRECTED ON THAT GROUND.

3          THE COURT:  I THINK THE TESTIMONY IS RELEVANT.

4          MR. NICK:  THANK YOU.

5

6          MR. SALEL:  THANK YOU.

7      (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)

8          THE COURT:  THE OBJECTION IS OVERRULED.

9  Q:   BY MR. NICK:  IS IT CORRECT THAT YOU HAVE

10     EXPRESSED YOUR COMPLETE DISLIKE OF INCARCERATION

11     AND YOUR JUST ABSOLUTE DESIRE TO BE HOME WITH YOUR

12     CHILDREN AND YOUR FAMILY?

13 A:   YES

14

15 Q:   AND THAT'S WHAT YOU WANT THE MOST; RIGHT?

16 A:   RIGHT.

17 Q:   AND THAT'S ONE OF THE REASONS WHY YOU'RE

18     TESTIFYING HERE; CORRECT?

19

20 A:   RIGHT.

21  (Tr. PageID 929-31)

22
23     Without Mr. Nick having prior knowledge of the outside, and ongoing,

24 investigation into Claudia's misconduct case, this testimony is a simple reiteration

25 that she was in cooperation with the government. Withholding that information

26
27 from my attorney precluded him from impeaching her obviously shifting stories

28 for reasons that make more sense than "saving her own hide" in this case alone and

BRIEF IN SUPPORT OF §2255 MOTION

1  gave more weight to the argument that she was embellishing and/or exaggerating

2
   her damning testimony for her own benefit.
3

4       This is a clear *Brady* violation that prejudiced my trial greatly.

5

6       For Hector, he was involved in another CBP case alleging corruption and

7  bribery involving the "friend" he testified in my trial as the one who rescued him

8
9  from us (on the allegations of witness tampering). The information of the existence

10 of this investigation and case was never made available to me by the government,

11
12 and I only discovered this information through glancing at a document my attorney

13 had in his possession and had left out during trial.

14
        Both Claudia's and Hector's second, outside cases, are material and relevant
15

16 here. Had I known, and had my defense attorney been competent, these cases

17 could have (and should have) been used to impeach the witness testimony of both

18
19 of them. The jury, not having this information, was unintentionally biased against

20 my brother and I.

21
        This fact is both a *Brady* violation on the part of the government, and clear
22

23 IAC on the part of defense counsel. This argument is placed here because only

24
   Hector's case was known to defense counsel, while Claudia's was completely
25

26 unknown to the best of my knowledge.

27

28

BRIEF IN SUPPORT OF §2255 MOTION

### III.   Productive Sabotage of Defense

While incarcerated at the Metropolitan Correctional Center in San Diego, AUSA Timothy F. Salel attempted to create undue hardship for me. For solely punitive reasons, he called the Warden of the MCC to have both my brother and myself immediately removed from the facility, in order to create distance between us and our elderly parents who visited us regularly.

I was told this by the Warden directly, who can be subpoenaed in future hearings to corroborate this event. During an open house inspection, the warden stated "Salel is your U.S. Attorney right? I know because he called me to have you guys moved from here. He was being real adamant and insisting about it. I told him he was not going to tell me how to run my prison. The reason I told him that is because I see you guys working all the time, you guys don't cause any problems. It was very strange a prosecutor would call me and ask me to do that."

This quote is from memory and very likely a paraphrased version of what he told me, but the content is correct and true. A prosecutor influencing prisoner custody, in the same way as having us intentionally housed in Mexico's most dangerous prison, is misconduct intended specifically to put my brother and I on a less-equal playing field. This is precisely the "foul blow" that was warned about in *Berger, id.*

BRIEF IN SUPPORT OF §2255 MOTION

Further adding to this, the prosecution relied on testimony from Agent Sean Isham from the CBP offices, who specifically had animus against me long before this case began. There are records at the CBP showing that I had filed multiple complaints against Agent Isham for his racist remarks toward me. Knowing this bias and still relying on him as a witness shows both "foul" play by the prosecutor and IAC by my counsel for not impeaching his testimony with this knowledge.

Finally, during the entirety of my trial, there were multiple CBP and Immigration and Customs Enforcement (ICE) agents that were in attendance who sat behind the prosecutor's table. Some of these agents were those who would testify later, and spent a majority of the time in the courtroom either verbally or non-verbally intimidating and threatening both my brother and myself. The government knew this was going on, and this Court even acknowledged this, but did nothing more than pay lip service to keeping the proceedings civil.

**C) GENERAL DUE PROCESS VIOLATIONS**

Outside of IAC and prosecutorial misconduct there were multiple other instances at trial that violated my rights to due process.

First, there was a witness on the stand, Sandra Muro, who was being coached by cell phone on her testimony while on the stand. The Court and both defense and government counsel were aware of this and the conduct was noted by the court, but no action was taken to make her put her phone away.

1     Second, there was bias from the Court from the outset that manifested itself

2

3    in several ways. The most stark way this was manifested was in the sentences I

4    was given both after the guilty verdict at trial, and then again on remand from the

5    Ninth Circuit. This includes, but is not exclusive to, acquitted and vacated conduct

6

7    being used at resentencing, excessive fines for punitive intent, and punitive

8    sentencing for "remaining mum" on other actions of the conspiracy and co-

9    defendants.

10

11     Third, there were "meetings" that took place where both myself and my

12

13    brother were hauled in by the U.S. Marshals to the offices of the U.S. Attorney for

14    discussions about the case. We had retained defense counsel that was responsible

15    for our criminal defense, and that counsel was purposely kept from these meetings.

16

17    **I.   Sandra Muro Was Being Coached for her Testimony on the Stand**

18         **Via Cell Phone**

19    Having a cell phone on your person while on the witness stand shouldn't happen.

20

21    Most courthouses do not allow cell phones beyond security for this very reason.

22    However, simply having one's cell phone available isn't necessarily a violation of

23    due process.

24

25     However, when a witness has access and is actively using their cell phone

26

27    while delivering testimony that is beneficial to the government, and damning to the

28

BRIEF IN SUPPORT OF §2255 MOTION

1  defendant(s), it undermines the integrity of the witness, the hearing, and the case

2  wholesale.

3

4       Not only did defense counsel know about her use of her cell phone on the

5  witness stand, she was made aware that it's use was barred by the Court.

6

7  THE COURT:    MA'AM, EXCUSE ME. IN THE EVENT THAT YOU'RE

8                USING YOUR PHONE, YOU SHOULD NOT DO THAT

9                DURING THE TESTIMONY.

10               (Tr. PageID: 1044 Lines 19-21)

11

12

13      However, this is the last that is spoken of it, and there was no admonishment

14  of the Court to put the phone away or surrender it to Marshals for the duration of

15  her testimony. She was allowed to continue being on her phone for the remainder

16

17  of her testimony.

18

19      Her use of her cell phone to be coached on her testimony, especially when

20  that testimony was in relation to her cooperation agreement with the government

21  for a §5K1.1 sentence reduction, clearly taints her testimony and prejudiced the

22

23  jury. In fact, her plea agreement itself was dependent on her testimony against me:

24

25  [Ms. Wasserman, questioning Ms. Muro]

26  Q:   MS. MURO, DID YOU PLEAD GUILTY TO TRANSPORTING

27       ILLEGAL ALIENS?

28  A:   YES

1   Q:   AND WAS THAT BASED ON THE TRANSPORTATION THAT YOU
2        DID FOR HECTOR?

3   A:   YES

4   Q:   AND WAS THAT ONE COUNT OF TRANSPORTATION OF
5        ILLEGAL ALIENS?

6
7   A:   YES

8   Q:   PURSUANT TO THAT PLEA AGREEMENT, DID YOU AGREE TO
9        TESTIFY IN THIS CASE?

10  A:   YES

11  Q:   BASED UPON YOUR COOPERATION, DID THE UNITED STATES
12       RECOMMEND PROBATION ON THAT CASE?

13  A:   YES

14
15  (Tr. PageID: 1047 Line 10 - 1048 Line 2)

16

17      This clearly demonstrates a few important items. First, that Ms. Muro

18

19  promised the United States testimony against me at my trial. Second, that her plea

20  agreement was contingent upon this cooperation. Last, it shows that, being on her

21

22  phone, her testimony was suspect and that suspect testimony was allowed to

23  continue despite her using her cell phone to be coached on her testimony.

24

25

26

27

28

## II.  Judicial Bias Against Defendants

The "Trial Penalty" is a well known side-effect in the U.S. Criminal Justice System that isn't so much a penalty, but a lack of benefit from negotiating a plea of guilty with the government. This has been challenged and it's legality upheld.

However, penalties at sentencing for refusing to cooperate with the government go well beyond the trial penalty and into punitive bias. Although *United States v. Carter*, 560 F.3d 1107 (9th Cir. 2009) makes clear that disparities in sentences that would run afoul of §3553(a)(6) are lawful when the lesser sentences went to those who *did* cooperate with the government, the situation here is clearly different.

The sentencing Court, who this motion is going to first, did more than simply refrain from decreasing my sentence(s) for "remaining mum". The Court actively and intentionally used both legal and unlawful methods of increasing my sentence beyond the statutory maximum in part because of this reticence.

Thus, while neglecting a sentence departure downward because there was no cooperation with the government is lawful under *Carter*, **increasing** a sentence (especially increasing a sentence beyond a statutory maximum without a jury finding of fact) because of lack of cooperation is both a violation of *Booker, id,* and a denial of due process.

BRIEF IN SUPPORT OF §2255 MOTION

1    A court may not draw an adverse inference from a defendant's silence when

2    determining the facts of the offense at sentencing. *Mitchell v. United States,* 526

3

4    U.S. 314, 329-330 (1999). A judge cannot penalize a defendant "by enhancing his

5    sentence base upon the defendant's failure to cooperate by implicating other

6

7    persons..." *United States v. Safirstein,* 827 F.2d 1380 (9th Cir. 1987).[6]

8

9    Another point of evidence that the sentencing Court had punitive intent, in

10   part because I "remained mum" when asked to cooperate, was the excessive fine

11   pronounced. Given that I will be, were I to complete my full sentence, 64 years old

12

13   when I am released from prison, I will be either retirement age, or very close to it.

14   Without working well into my 80's, I'll never be able to both pay off my $250,000

15   fine and be able to independently support myself after prison. This was intentional

16

17   and by design by the sentencing Court, showing bias against me for many reasons;

18   among those is my choice to not cooperate with the government.

19

20   Finally, on resentencing, the Court relied on both acquitted conduct *and*

21   vacated conduct to arrive at the sentence pronounced to me after my case was

22

23   remanded by the Ninth Circuit. This was done to arrive at a substantively

24   equivalent sentence to the one I was given at first sentencing, and decidedly

25

26

27   _____

28   6  While these cases support the claim of judicial bias here, they were both used in affirming my
        sentence on remand. Case No. 16-50135 (9th Cir. 2018) at 4.

BRIEF IN SUPPORT OF §2255 MOTION

1    punitive, considering the bribery charges had been thrown out by the appellate
2
3    court.

4        Even if a single instance does not raise to the level of a denial of due
5
6    process, the cumulative effect is still such a violation. *Silva v. Woodford*, 279 F.3d
7    825 (9th Cir. 2002) (Holding that while individual faults may fail the prejudice
8
9    prong of *Strickland,* a finding of cumulative prejudice can still be reached). Each
10   of these things separate may not demonstrate judicial bias and a denial of due
11   process. However, together, they have the effect of demonstrating just that.
12

13   **III.    Separation of Client and Defense Attorney**
14   On several occasions, one I can recall in particular, I was hauled in handcuffs to
15
16   the office of the AUSA. While en route, I was intimidated by the lead agent in the
17   case, SA Keith Johnson, and other agents when I was being escorted by them to
18
19   and un-requested meeting. My attorney was purposefully not present at this
20   meeting.

21
22       I was mishandle and threatened by the agents while handcuffed. All this
23   despite, at the initial stages of the investigation, our then-attorney Jan Ronis
24
25   provide a letter to the AUSA that indicated that if he wanted to talk to us we could
26   be in their presence within 45 minutes.

27

28

**ARGUMENT TWO: UNLAWFUL AND UNCONSTITUTIONAL SENTENCE**

The $250,000 fine that I received with both original sentencing, then resentencing, has already been discussed as being punitive and not accomplishing any interests of justice. Because I will be elderly by the time I am released from this sentence, were I to serve the entire sentence as pronounced, I will be financially hobbled for the rest of my natural life while shackled with this debt, and it is therefore a violation of the "excessive fines" prohibition in the Eighth Amendment.

Next, the sentence I am now serving was pronounced after the bribery convictions in my original trial were vacated by the Ninth Circuit Court of appeals. Originally, I was sentenced to 35 years (420 months) of incarceration, my second sentence on remand was for 28 years (336 months).

When that sentence was appealed, the Ninth Circuit decided that the new sentence:

(a) Were adequately explained and did not violate §3553(a)(6) for being "unwarranted";

(b) Were adequately explained in context of the departures and the ultimate sentences imposed;

(c) Were not based on clearly erroneous facts;

1   (d) Were not given with impermissibly drawn adverse inferences from my

2
3   choice to not cooperate;

4   (e) The court did not err by considering acquitted, dismissed, and uncharged

5
6   conduct when it compared my to similarly situated defendants for purposes

7   of §3553(a)(6); and,

8
9   (f) The Court did not abuse its discretion by imposing the 336-month sentence

10  on remand.

11
12      What this opinion did not do is consider that the consideration of the

13  acquitted, dismissed, and uncharged conduct from (e), above, violates the

14
15  constitution and the clearly established precedents in *Booker, Apprendi,* and

16  *Blakely.*

17
18      *Apprendi*, and its progeny, established that all evidence that is used to

19  increase a sentence beyond the statutory maximum shall be found beyond a

20
21  reasonable doubt by a jury. It is clear here that this is exactly what has happened.

22      I was originally sentenced using the adjusted offense level of the bribery

23
24  offense, as it resulted in the highest statutory maximum and adjusted offense

25  levels. The statutory maximum for the second sentence I received was no longer

26

27

28

tied to the bribery counts, as those had been vacated by the Circuit Court, and thus the statutory maximum then rested in the money laundering counts at 20 years.[7]

Whether this sentence was "stacked" or not, the intent was to bring the sentence imposed on remand as close to the upwardly departed offense level as could be justified. This had the effect of sentencing me above the statutory maximum for the money laundering count.

Because I was sentenced above the statutory maximum, wherein part of count 15 was made consecutive to the sentences for other counts, and part was made concurrent, the facts that brought the entire sentence above the statutory maximum for the Money Laundering count (count 15) must have been found by a jury beyond a reasonable doubt to justify that sentence. *See Booker, et. al.*

The facts of the witness tampering and obstruction of justice, which were used in the upward departures that justified this sentence, were acquitted by jury and not found beyond a reasonable doubt. Acquitted conduct is permitted in some instances in federal sentencing, but not when it is used to push a sentence beyond the statutory maximum. Thus, these upward departures violate *Booker*.

Further, the bribery charges, although originally rendered guilty by a jury, were done so with an Aiding and Abetting instruction that was struck down by the

---

7  See 18 U.S.C. §1956(a)(2) and (h).

1    Ninth Circuit. Thus, the finding of the jury here also cannot be construed as a

2

3    finding of the bribery conduct beyond a reasonable doubt by a jury, as the verdict

4    itself was dismissed due to the jury misunderstanding it's duty. Thus, the upward

5

6    departures for the dismissed conduct on the bribery charges also violate *Booker* as

7    not being found by a jury beyond a reasonable doubt.

8

9        The only viable remedy here, is to vacate my sentence, and resentence me

10    without using the bribery,[8] witness tampering and obstruction of justice departures.

11    In effect, this accounts for 6 of the 12 points of upward departure at my

12

13    resentencing, using an adjusted offense level of 43. Without these 6 points that

14    were added to increase my sentence beyond the statutory maximum of 20 years,

15

16    my adjusted offense level would have (and should have) been 37.

17        This reveals, at Criminal History Category of I, a guidelines range of 210-

18

19    262 months. As the statutory maximum of 240 stands, the effective sentencing

20    range of this court at resentencing should have been 210-240 months. Without

21    running afoul of *Apprendi, Booker,* and *Blakely,* my current sentence should be

22

23    within this range.

24        My sentence therefore must be vacated, on this point alone, and

25

26    resentencing ordered.

27

28

---

8 §5K2.21

1

## CONCLUSION

2

3

Because the record shows clear prosecutorial misconduct, coaching of witnesses

4

on the witness stand while under oath, and intimidation tactics;

5

6

7

Because it is clear from the record the my due process was violated in the course

8

of the prosecution against me; and,

9

10

11

Because my constitutional protections against cruel and unusual punishment was

12

violated with the length of my sentence ...

13

14

15

I pray this court order further evidentiary discovery into my assertions, vacate the

16

17

sentence and conviction against me, and order a new trial, resentencing, or any

18

other relief it deems appropriate.

19

       Respectfully submitted on this _____ day of _____, 2019.

20

21

22

23

/s/ _____

24

RAUL VILLARREAL #14218-298
*Pro Se* Defendant, Movant

25

FCI Gilmer

26

Federal Correctional Institution
P.O. Box 6000

27

Glenville, WV 26351

28

1   **INDEX**

2

3   **D) ORDER AND OPINION OF THE NINTH CIRCUIT IN CASE NO 16-**
4           **50135**

5

6

7   **E) OPINION OF THE NINTH CIRCUIT IN CASE NO 13-50295**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRIEF IN SUPPORT OF §2255 MOTION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 03 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50135 |
| Plaintiff-Appellee, | D.C. No. 3:08-cr-01332-JAH-1 |
| v. | |
| RAUL VILLARREAL, | ORDER |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50136 |
| Plaintiff-Appellee, | D.C. No. 3:08-cr-01332-JAH-2 |
| v. | |
| FIDEL VILLARREAL, | |
| Defendant-Appellant. | |

Before:  GRABER and HURWITZ, Circuit Judges, and KORMAN,[*] District Judge.

The panel has voted to deny Appellants' petition for panel rehearing.  Judges

Graber and Hurwitz have voted to deny Appellants' petition for rehearing en banc,

and Judge Korman has so recommended.

---

[*]    The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

Appellants' petition for panel rehearing and rehearing en banc is DENIED.

**FILED**

**NOT FOR PUBLICATION**

FEB 23 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50135 |
| Plaintiff-Appellee, | D.C. No. 3:08-cr-01332-JAH-1 |
| v. | |
| RAUL VILLARREAL, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50136 |
| Plaintiff-Appellee, | D.C. No. 3:08-cr-01332-JAH-2 |
| v. | |
| FIDEL VILLARREAL, | |
| Defendant-Appellant. | |

Appeals from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted February 7, 2018
Pasadena, California

_____

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before: GRABER and HURWITZ, Circuit Judges, and KORMAN,** District Judge.

Defendants Raul and Fidel Villareal challenge their sentences on several grounds.

1. Reviewing for abuse of discretion, <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007), we reject Defendants' arguments that their sentences are procedurally unreasonable.

a. The district court adequately explained why it found that the cases cited by Defendants did not establish unwarranted sentencing disparities. <u>See</u> <u>United States v. Trujillo</u>, 713 F.3d 1003, 1011 (9th Cir. 2013) ("[A] sentencing judge presented with nonfrivolous arguments on § 3553(a) factors should ordinarily explain why he rejects them."). Although the court referred to only one of Defendants' cited cases by name, it made clear that it found Defendants' conduct here far more egregious than that in the other, cited cases.

b. The court also adequately explained the extent of its departures and the ultimate sentences it imposed. <u>See</u> <u>United States v. Rudd</u>, 662 F.3d 1257, 1260 (9th Cir. 2011) ("A sentencing judge must explain a sentence sufficiently to communicate that a reasoned decision has been made and permit meaningful

---

** The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

appellate review." (internal quotation marks omitted)).  It is evident from the record that the court thought that Defendants' abuse of their official positions to carry out a scheme whose goal was directly contrary to the mission of Defendants' agency, coupled with Defendants' violent efforts to obstruct justice, warranted sentences well above the pre-departure Guidelines ranges.

 c. The district court did not rest its sentencing decisions on clearly erroneous facts.  See Gall, 552 U.S. at 51 (listing "selecting a sentence based on clearly erroneous facts" as a "significant procedural error").  The court's finding that Defendants' smuggling scheme involved 1,000 aliens was not clearly erroneous, even assuming that the court had to find that fact by clear and convincing evidence.  Furthermore, we are convinced that, even if the evidence had supported a finding of only 400 aliens, as Defendants argue, the district court still would have selected the same ultimate sentences, thus rendering any error harmless.  See United States v. Ellis, 641 F.3d 411, 423 (9th Cir. 2011) (discussing how, in evaluating the effect of a district court's factual error on a sentence, we look at the error's effect on the ultimate sentence imposed, not its effect on a particular departure).  The primary drivers behind the lengthy sentences were Defendants' abuse of their positions and their efforts to obstruct justice.

2. Reviewing Defendants' Fifth Amendment arguments de novo, United States v. Bahr, 730 F.3d 963, 965 (9th Cir. 2013), we conclude that the district court did not impermissibly draw adverse inferences from their silence or punish them for failure to cooperate. See Mitchell v. United States, 526 U.S. 314, 329–30 (1999) (holding that a court may not draw an adverse inference from a defendant's silence when determining the facts of the offense at sentencing); United States v. Safirstein, 827 F.2d 1380, 1388 (9th Cir. 1987) ("[A] sentencing judge may not penalize the exercise of a defendant's privilege against self-incrimination by enhancing his sentence based upon the defendant's failure to cooperate by implicating other persons or otherwise admitting guilt to crimes with which he is not charged."). The only statement made by the district court that came close to being problematic was its comment regarding Defendants' "remaining mum." But that comment, considered in context, was an explanation for the relatively lenient sentences imposed in cases that the court was comparing to this case for purposes of 18 U.S.C. § 3553(a)(6). Because "a sentencing disparity based on cooperation is not unreasonable," it was proper for the court to consider Defendants' lack of cooperation in the § 3553(a)(6) context. United States v. Carter, 560 F.3d 1107, 1121 (9th Cir. 2009).

4

3. The district court did not err by considering acquitted, dismissed, and uncharged conduct when it compared Defendants to similarly situated defendants for purposes of § 3553(a)(6). In comparing defendants under § 3553(a)(6), a court will almost necessarily have to consider the facts of the cases, including acquitted conduct, in order to tell whether the defendants are similarly situated and, if so, whether any sentencing disparities are "unwarranted." Defendants' Fifth and Sixth Amendment arguments are similarly unavailing. See United States v. Treadwell, 593 F.3d 990, 1017–18 (9th Cir. 2010) (rejecting the Sixth Amendment argument advanced by Defendants); United States v. Mezas de Jesus, 217 F.3d 638, 642 (9th Cir. 2000) (noting that the Fifth Amendment may require the government to prove certain facts by clear and convincing evidence at sentencing, but that such facts may still underlie a sentence).

4. The district court did not abuse its discretion by imposing on Raul and Fidel sentences of 336 and 270 months, respectively. See United States v. Autery, 555 F.3d 864, 871 (9th Cir. 2009) (holding that the substantive reasonableness of a sentence is reviewed for abuse of discretion). Although Defendants' sentences are significantly lengthier than the top end of their pre-departure Guidelines ranges, we are not persuaded that this is the "rare case" in which it is clear that the sentencing

court committed a clear error of judgment.  United States v. Ressam, 679 F.3d 1069, 1086–88 (9th Cir. 2012) (en banc).

5.  The district court did not err in calculating Fidel's Guidelines range by applying a two-level enhancement for bodily injury.  We review for abuse of discretion the district court's determination as to "whether the specific constellation of facts at issue meets the governing legal standard" set out in the Guidelines.  United States v. Gasca-Ruiz, 852 F.3d 1167, 1171 (9th Cir.) (en banc), cert. denied, 138 S. Ct. 229 (2017).  Here, the court did not abuse its discretion in determining that the relevant injuries were "painful and obvious."  U.S.S.G. §§ 1B1.1 cmt. n.1(B), 2L1.1(b)(7)(A) (2015).

**AFFIRMED.**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 29 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50295 |
| Plaintiff - Appellee, | D.C. No. 3:08-cr-01332-JAH-1 |
| v. | |
| RAUL VILLARREAL, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50296 |
| Plaintiff - Appellee, | D.C. No. 3:08-cr-01332-JAH-2 |
| v. | |
| FIDEL VILLARREAL, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted May 4, 2015
Pasadena, California

Before: FISHER, BEA and FRIEDLAND, Circuit Judges.

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Raul and Fidel Villarreal appeal their convictions and sentences for conspiracy to bring aliens into the United States for financial gain in violation of 18 U.S.C. § 371 (Count 1), bringing aliens into the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) (Counts 2-12), receiving a bribe by a public official in violation of 18 U.S.C. § 201(b)(2)(A) and (C) (Count 13), and conspiracy to launder money through international promotion in violation of 18 U.S.C. § 1956(a)(2)(A) and (h) (Count 15).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, vacate in part and remand.

**1.** The district court did not violate the Villarreals' Sixth Amendment right to a public trial by excluding the Villarreals' brother from the courtroom.  Because this was a partial closure of the trial, *see United States v. Yazzie*, 743 F.3d 1278, 1288 n.4 (9th Cir. 2014), we apply the *Waller v. Georgia*, 467 U.S. 39, 48 (1984), factors as applied by *United States v. Sherlock*, 962 F.2d 1349, 1356-57 (9th Cir. 1989).  *See United States v. Rivera*, 682 F.3d 1223, 1236 (9th Cir. 2012).

Applying the first factor, the district court had a "substantial reason," *Sherlock*, 962 F.3d at 1357, for excluding the Villarreals' brother from the courtroom.  He had intimidated and threatened government witnesses, including by making throat-slashing gestures, following them into the hallway and staring them down.  *See Rivera*, 682 F.3d at 1236 (noting that "protecting witnesses from fear of

testifying" may justify closing a courtroom); *United States v. Hernandez*, 608 F.2d 741, 747 (9th Cir. 1979) (explaining that "the right to a public trial does not preclude a limited exclusion of spectators when there is a demonstrated need to protect the witness from threatened harassment or physical harm").

As to the second factor, the closure was "narrowly tailored" to protect the integrity of the proceedings. *See Sherlock*, 962 F.2d at 1358. The district court excluded only a single spectator from the trial; other members of the Villarreal family were permitted to be present throughout the proceedings. Given the brother's serious and repeated misconduct, the district court was permitted to ensure the integrity of the proceedings by excluding him from the remainder of the trial, not only for testimony by government witnesses. The exclusion order was proportionate and appropriate under the circumstances. *Cf. United States v. Addison*, 708 F.3d 1181, 1188 (10th Cir. 2013) ("[I]t was proper in this case for the court to exclude [a single spectator] from the entire trial because more than one witness complained of intimidation. Indeed, protecting the participants in a trial is an integral part of protecting the integrity of the trial itself.").

Under the third factor, the district court adequately considered "reasonable alternatives to closing the proceeding." *Waller*, 467 U.S. at 48. The district court had already warned everyone in the courtroom, in the brother's presence, against

"nonverbal communications."  Given the seriousness of the brother's misconduct, the district court was not required to provide a further admonishment before excluding him from the courtroom.  *See Sherlock*, 962 F.2d at 1359.

Finally, turning to the fourth factor, the district court made "findings adequate to support the closure."  *Waller*, 467 U.S. at 48.  The district court was not required to hear from the intimidated witnesses themselves, as in *Guzman v. Scully*, 80 F.3d 772, 775-76 (2d Cir. 1996), because it was undisputed that the Villarreals' brother engaged in misconduct, and the conduct was per se intimidating.  The court could have made more detailed findings on the scope of the closure, but under these circumstances, in which exclusion from the entire trial was plainly justified, the findings were sufficient for us to conduct an appellate review and conclude that the court carried out its obligations under *Waller*.

In sum, the Villarreals' right to a public trial was not violated.[1]

**2.**  As the government concedes, "[t]here was no testimony from any witness that one brother aided or assisted the other in receiving bribes."  Accordingly, as

---

[1] We reject the government's arguments that the Villarreals forfeited their right to a public trial by failing to object to the district court's closure order, *see Rivera*, 682 F.3d at 1232-35, that the closure was too trivial to implicate the public trial right, *see id.* at 1232 (noting that exclusion of a family member "implicates Sixth Amendment values more directly than the exclusion of the general public"), and that, under *Cosentino v. Kelly*, 102 F.3d 71, 73 (2d Cir. 1996), the *Waller/Sherlock* factors need not be examined.

4

the government also concedes , the district court erred by giving a supplemental aiding and abetting instruction on the bribery count in response to a question from the jury. *See United States v. McLister*, 608 F.2d 785, 791 (9th Cir. 1979) ("It is of course well established that an instruction should not be given if it lacks evidentiary support . . . .").

We need not decide whether giving the aiding and abetting instruction amounted to constitutional error. *Cf. Dixon v. Williams*, 750 F.3d 1027, 1032 (9th Cir. 2014) (describing how, in the habeas context, we determine whether an erroneous jury instruction amounted to constitutional error). Even applying the less onerous prejudice standard governing nonconstitutional error, the government has not demonstrated the error was harmless.

To show that nonconstitutional error is harmless, "the government must show a fair assurance that the verdict was not substantially swayed by the error." *United States v. Chase*, 340 F.3d 978, 993 (9th Cir. 2003) (en banc) (internal quotation marks omitted). Here, the government has not left us with such a fair assurance. In fact, the record strongly suggests that the error did sway the jury's verdict. After deliberating for a full day without reaching a verdict, the jury felt it necessary to ask the judge to clarify whether each of the elements of bribery had to be found with respect to each of the Villarreals. In response, the district court gave

the erroneous aiding and abetting instruction.  Only after it received this erroneous instruction did the jury convict the Villarreals of bribery.  Under these circumstances, we have no "fair assurance" the erroneous instruction did not substantially sway the jury's verdict.  *Cf. United States v. Gergen*, 172 F.3d 719, 724 (9th Cir. 1999) ("[B]ecause the jury specifically requested further instruction as to the *mens rea* element, it is apparent the jury considered the *mens rea* element prior to finding Gergen guilty; the fact that the jury was influenced by the instruction is clear.").

In sum, because the supplemental instruction was given in error, and the error was not harmless, we vacate the Villarreals' bribery convictions.[2]  We also necessarily vacate their sentences, which were based on the bribery convictions. We nonetheless address the Villarreals' claims of sentencing error because they may arise on remand.  *See United States v. Van Alstyne*, 584 F.3d 803, 817 n.14 (9th Cir. 2009).

---

[2] Because we vacate the Villarreals' bribery convictions on this ground, we do not reach their arguments that the supplemental instruction violated Federal Rule of Criminal Procedure 30, that it erroneously set forth the mens rea for the offense of aiding and abetting bribery and that the district court violated their rights to due process of law by introducing a new aiding and abetting theory during jury deliberations without affording them the opportunity to present additional argument to the jury.

6

**3.** There was no error in the district court's jury instruction on conspiracy to commit money laundering. The court properly instructed the jury on the elements of the offense, including the underlying money laundering crime, 18 U.S.C. § 1956(a)(2)(A). *See United States v. Alghazouli*, 517 F.3d 1179, 1189 (9th Cir. 2008). The jury was instructed that, in order to find the Villarreals guilty, it had to find "there was an agreement between two or more persons to launder money through international promotion, that is, to transmit or transfer monetary instruments or funds from a place inside the United States to a place outside the United States *with the intent to promote the carrying on of the specified unlawful activity, that is, bringing aliens to the United States for the purpose of commercial advantage or private gain.*" This instruction adequately covered the elements of the offense, including the specific intent required under § 1956(a)(2)(A). *See United States v. Trejo*, 610 F.3d 308, 313-14 (5th Cir. 2010). The Villarreals also have not presented any authority for the proposition that the court was required to denote the conspiracy elements and the elements of the underlying money laundering crime in separate instructions.

**4.** The district court did not misapply grouping principles. Under the plain language of the Sentencing Guidelines, "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest

7

offense level," not the Group with the highest statutory maximum. U.S.

Sentencing Guidelines Manual (U.S.S.G.) § 3D1.4. Accordingly, the district court

properly relied on Group Two to establish the combined offense level,

notwithstanding the 15-year statutory maximum sentence applicable to the bribery

offense. We do not read *United States v. Brinton*, 139 F.3d 718, 721-22 (9th Cir.

1998), as holding otherwise. Nor did the district court's sentencing run afoul of

U.S.S.G. § 5G1.2. The 10-year sentences the court imposed on the bribery counts

fell within the 15-year statutory maximum. In addition, the guideline ranges

calculated by the district court (although erroneous for other reasons, as discussed

below) fell within the combined statutory maximums.

**5.** The district court did not err in imposing aggravating role adjustments.

*See* U.S.S.G. § 3B1.1. First, the district court properly found the Villarreals had

aggravating roles not only with respect to the alien smuggling counts but also with

respect to the bribery count in particular. *See United States v. Antico*, 275 F.3d

245, 270 (3d Cir. 2001). The record shows the Villarreals exercised the same

decisionmaking authority and control over the payments they received as they

exercised over other aspects of the operation.

Second, the district court properly found there were five or more

participants. Under the Guidelines, "[a] 'participant' is a person who is criminally

8

responsible for the commission of the offense, but need not have been convicted."
U.S.S.G. § 3B1.1 cmt. n.1.  Here, although only two persons actually received
bribes, others – including Claudia Gonzalez, Hector Cabrera and Armando Garcia
– aided and abetted the Villarreals in the crime of receiving bribes.  The participant
requirement, therefore, is satisfied.  *See United States v. Smith*, 719 F.3d 1120,
1126 (9th Cir. 2013) ("Any person who knowingly abets the defendant's conduct
qualifies as a 'participant.'").

Third, the district court properly found the Villarreals "exercised some
degree of control or organizational authority over others."  *United States v. Avila*,
95 F.3d 887, 890 (9th Cir. 1996).  The evidence shows the Villarreals specifically
directed Claudia Gonzalez in the manner in which their payments were to be made,
as the district court found.

Fourth, the district court did not clearly err when it concluded the Villarreals
received a "lion's share" of the proceeds of the smuggling operation.  *See* U.S.S.G.
§ 3B1.1 cmt. n.4.  The Villarreals point out that Ana Trotman may have received a
greater share of the proceeds on some of the smuggling runs, but Trotman was not
the only person supplying the operation.  Furthermore, even if the Villarreals did
not receive the largest share of the proceeds, they received an enormous share, and,
given the other evidence that they directed and controlled the operation, the court's

9

ultimate conclusion the Villarreals played aggravating roles was not clearly erroneous.

**6.** The district court erred in applying the Sentencing Guidelines. Under the Guidelines, a sentencing court should (1) conduct the grouping analysis under § 3D1.4, (2) determine a guideline range, (3) consider departures and (4) arrive at and adequately explain a sentence by reference to the 18 U.S.C. § 3553(a) factors. *See* U.S.S.G. § 1B1.1. Here, however, the district court appears to have (1) calculated a total offense level, including increases in the offense level to account for departures, (2) conducted a grouping analysis, (3) calculated a guideline range for Raul (none was calculated for Fidel) and (4) arrived at a sentence. The court erred by considering departures before calculating the guideline ranges. *See* U.S.S.G. §§ 1B1.1, 3D1.3(a); *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011); *United States v. Evans-Martinez*, 611 F.3d 635, 643 (9th Cir. 2010); *United States v. Joetzki*, 952 F.2d 1090, 1097 (9th Cir. 1991). The court also erred by failing to calculate a guideline range for Fidel and by calculating an erroneous guideline range for Raul. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). And the court erred by failing to adequately explain the sentences in light of the § 3553(a) factors. *See id.* at 992. The court should bear these considerations in mind on remand.

**7.** The district court did not err by finding that the Villarreals each received more than one bribe. *See* U.S.S.G. § 2C1.1(b)(1). "Although the payments were part of a larger conspiracy, they were not installment payments for a single action." *United States v. Kahlon*, 38 F.3d 467, 470 (9th Cir. 1994); *see* U.S.S.G. § 2C1.1 cmt. n.2. The Villarreals also offer no support for their contention they cannot be subject to the more-than-one-bribe enhancement merely because they were charged with a single count of bribery.

**8.** Because we vacate the sentences on other grounds, we do not reach the Villarreals' argument that their sentences were substantively unreasonable.

* * *

We affirm the Villarreals' convictions for conspiracy to bring aliens into the United States for financial gain, bringing aliens into the United States for financial gain and conspiracy to launder money through international promotion. We vacate their convictions for receiving a bribe by a public official. We also vacate their sentences. We remand to the district court for proceedings consistent with this disposition.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**

The government's motion for judicial notice is **DENIED** as moot.

11

PRESS FIRMLY TO SEAL

Thank you for using
Express™ service

PRIORITY MAIL EXPRESS
POSTAGE REQUIRED

U.S. POSTAGE PAID
PMEFCSM
PAPILLION, NE
68046
NOV 29, 19
AMOUNT
**$49.10**
R2304M116597-9

1007   92101

RECEIVED
DEC 0 2 2019
DISTRICT COURT
TO . A . ..

**FOR DOMESTIC AND INTERNATIONAL USE**

**UNITED STATES POSTAL SERVICE®**   **PRIORITY MAIL EXPRESS®**

EJ 226 436 337 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( )
Raul Villarreal #14218-298
FCI Gilmer
Federal Correctional Institution
P.O. Box 6000
Glenville, WV 26351

**DELIVERY OPTIONS** (Customer Use Only)
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )
Clerk of the U.S. District Court
Southern District of California
333 West Broadway
Suite 420
San Diego, CA 92101
ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com® or call 800-222-1811.
■ $100.00 insurance included.

⬅ **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT** (if applicable)
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☒1-Day   ☐2-Day   ☐Military   ☐DPO

PO ZIP Code   Scheduled Delivery Date (MM/DD/YY)   Postage
080410   11-30-19   $ 49.10

Date Accepted (MM/DD/YY)   Scheduled Delivery Time   Insurance Fee   COD Fee
11-29-19   ☐ 10:30 AM ☒ 3:00 PM   $   $
                    ☐ 12 NOON

Time Accepted   10:30 AM Delivery Fee   Return Receipt Fee   Live Animal Transportation Fee
3:20 ☐AM ☒PM   $   $   $

Special Handling/Fragile   Sunday/Holiday Premium Fee   Total Postage & Fees
$   $   $ 49.10

Weight   ☐Flat Rate   Acceptance Employee Initials
2 lbs. 2.50   
$ 49.10

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)   Time ☐AM ☐PM   Employee Signature
Delivery Attempt (MM/DD/YY)   Time ☐AM ☐PM   Employee Signature

LABEL 11-B, MARCH 2019   PSN 7690-02-000-9996

Flat Rate Mailing Envelope Expected Delivery to U.S., select APO/FPO/DPO, and select International Destinations. See DMM and IMM at pe.usps.com for complete details.
Money Back Guarantee for U.S. destinations only.

Please Recycle

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13C © U.S. Postal Service; July 2013; All rights reserved.

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE



**UNITED STATES POSTAL SERVICE®**

THIS PACKAGING IS RECYCLABLE.

DuPont™ Tyvek®
Protect What's Inside™
©2002 DUPONT™ AND TYVEK® ARE TRADEMARKS OF DUPONT.